**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAKLEEN M.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:25-cv-17898 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Jakleen M.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83. (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Having reviewed and considered the parties' submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, Plaintiff's appeal of the Commissioner's final decision is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I. Background

### A. Procedural History

This matter arises out of the Commissioner's final decision denying Plaintiff's application for SSI, dated March 14, 2025. (*See* ECF No. 1.) On July 19, 2023, Plaintiff applied for SSI alleging disability due to severe impairments beginning January 1, 2021. (*Id.* ¶ 6; *see also* Transcript of Proceedings[1] ("Tr.") (ECF No. 5) at 148–56.) The Commissioner initially denied the application for SSI on October 27, 2023 (ECF No. 1 ¶ 7; *accord* Tr. at 81–85), and again upon reconsideration on June 12, 2024 (ECF No. 1 ¶ 8; *accord* Tr. at 92–95).

Plaintiff then filed a written request for a hearing. (ECF No. 1 ¶ 8; *accord* Tr. at 96.) Administrative Law Judge ("ALJ") Kevin Kenneally ("ALJ Kenneally") held a hearing on February 5, 2025. (ECF No. 1 ¶ 9; *accord* Tr. at 36–59.) In a decision dated March 14, 2025, ALJ Kenneally determined Plaintiff was not disabled within the meaning of the Act. (Tr. at 14–35; *accord* ECF No. 1 ¶ 10.) Notably, ALJ Kenneally found although Plaintiff suffers from severe impairments—"cervical and lumbar spine disorder; right shoulder tendinitis; right ankle disorder; diabetes mellitus; interface dermatitis; subacute cutaneous lupus erythematosus; asthma; obstructive sleep apnea; adjustment disorder with mixed anxiety and depressed mood"—she retains a residual functional capacity ("RFC") to perform sedentary work, and there exists jobs in significant numbers in the national economy that she can perform. (*See* Tr. at 19–31.) The decision became final when the Appeals Council declined review on April 18, 2025. (ECF No. 1 ¶¶ 11–12; *accord* Tr. at 7–13.)

[1] The administrative record is set forth in this transcript. (*See generally* ECF No. 5.)

On November 24, 2025, Plaintiff filed a civil action appeal of the final decision denying her application for SSI with this Court pursuant to 42 U.S.C. § 1383(c)(3). (ECF No. 1.) On March 27, 2026, Plaintiff filed her motion brief. (ECF No. 9.) The Commissioner filed an Opposition on May 13, 2026 (ECF No. 13), and Plaintiff filed a Reply on May 27, 2026 (ECF No. 14).

### B. Factual Background

Plaintiff is presently forty-five years old. (Tr. at 29.) She has a high school diploma and "does not have past relevant work." (Tr. at 29–30.) Plaintiff allegedly suffers from the following impairments: cervical and lumbar spine disorder; right shoulder tendinitis; right ankle disorder; diabetes mellitus; interface dermatitis; subacute cutaneous lupus erythematosus; asthma; obstructive sleep apnea; and adjustment disorder with mixed anxiety and depressed mood. (Tr. at 18.)

On October 7, 2023, medical consultant Kim Arrington, Ph.D., conducted a consultative psychiatric examination. (*See* Tr. at 548–51.) At the time, Plaintiff reported "dysphoric moods, crying spells, fatigue, difficulty concentrating, and irritability." (Tr. at 548–49.) Specifically, Plaintiff claimed she suffered "anxiety-related symptoms[,] such as excessive worry, nightmares, and flashbacks to when her mother passed away," and "panic attacks with no apparent trigger." (Tr. at 549.) Dr. Arrington described Plaintiff as responsive but "mildly confused." (Tr. at 549.) Dr. Arrington noted her "recent and remote memory skills were impaired possibly due to depression" and her "intellectual functioning is estimated to be in the low average range." (Tr. at 549–50.) Dr. Arrington diagnosed Plaintiff with "[a]djustment disorder with mixed anxiety and depressed mood." (Tr. at 550.) Dr. Arrington opined Plaintiff can both "follow and understand simple directions and instructions" and "perform simple tasks," but "will have significant difficulty learning new tasks and performing complex tasks due to significant difficulty with memory." (Tr.

at 550.) Dr. Arrington concluded "[t]he results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with [Plaintiff]'s ability to function on a daily basis." (Tr. at 550.)

On October 26, 2023, medical consultant Rachel Felsenfeld, Psy.D., reviewed the medical records and diagnosed Plaintiff with moderate limitations, opining she is able to "understand and follow simple instructions, to sustain mental pace, persistence, concentration, and attention for at least two-hour segments during a normal workday, and adapt in work-like settings." (*See* Tr. at 64–68.) On March 31, 2024, medical consultant Damarys Sanchez, Psy.D., reviewed the medical records and generally concurred with the opinions of Dr. Arrington and Dr. Felsenfeld. (*See* Tr. at 71–80.)

On October 10, 2023, Ronald Bagner, M.D., conducted a consultative examination. (*See* Tr. at 552–54.) At the time, Plaintiff reported a history of right ankle pain (6 years), lower back pain (3 years), and right shoulder pain (2 years). (Tr. at 552.) Plaintiff claimed she had undergone physical therapy for the ankle and shoulder and injections for her shoulder. (Tr. at 552.) She also claimed "she is diabetic, hypertensive, [and] has increased cholesterol." (Tr. at 522.) Dr. Bagner noted Plaintiff ambulated with a cane and a marked right limp. (Tr. at 522.) He also noted she could "get[] on and off the examining table with moderate difficulty and assistance" and "dress[] and undress[] with assistance" but "[wa]s not uncomfortable in the seated position during the interview." (Tr. at 522.) Dr. Bagner conducted a physical examination and noted a reduced range of motion with pain from movement in the right ankle and reduced range of motion in the lower back and right shoulder. (Tr. at 553.) Based on his review of the medical records and examination, Dr. Bagner diagnosed Plaintiff with "[r]otator cuff tear, right shoulder," "[c]hip versus avulsion injury, right ankle," and "[l]umbosacral strain." (Tr. at 553.) Dr. Bagner opined Plaintiff "can

ambulate short distances such as indoors without the cane, but would require a cane for longer distance such as outdoors for balance." (Tr. at 553–54.)

On October 25, 2023, medical consultant Arvind Chopra, M.D., provided a Disability Determination Explanation. (Tr. at 60–69.) Based on his review of the medical records, Dr. Chopra recommended a physical RFC capable of a narrow range of light work occasionally lifting and carrying twenty pounds and frequently ten pounds; standing and walking a total of four hours with the assistance of a hand-held assistive device; sitting a total of "about [six] hours"; and with a "[l]imited [r]ight" reaching overhead. (Tr. at 64–65, 68.) He also recommended a mental RFC with moderate "understanding and memory limitations," "sustained concentration and persistence limitations," "sustained concentration and persistence limitations," and "social interaction limitations." (Tr. at 65–67.) Dr. Chopra concluded Plaintiff "is able to adequately understand and follow simple instructions, to sustain mental pace, persistence, concentration and attention for at least two-hour segments during a normal workday, and to relate and adapt in work like settings." (Tr. at 67.) On June 12, 2024, medical consultant Caroline Shubeck, M.D., reconsidered Plaintiff's physical and RFC determinations, and generally concurred with the opinion of Dr. Chopra. (*See* Tr. at 71–80.)

On February 5, 2025, ALJ Kenneally conducted a hearing, which was attended by vocational expert Michael Smith. (Tr. at 36–59.) Based on Plaintiff's minimal past work, no classification was provided for same. (Tr. at 53.) Therefore, ALJ Kenneally requested Smith to consider a hypothetical individual

> with no past work experience who can perform the full range of sedentary work . . . except must use a cane in the non-dominant left hand for standing and walking; can occasionally push/pull, operate hand controls with the dominant right upper extremity; can occasionally push/pull, operate foot controls with the right lower extremity; can frequently reach overhead and all other direction with

> the dominant right upper extremity; can occasionally climb ramps and stairs; can never climb ropes, ladders, and scaffolds; can occasionally balance, stoop, kneel, and crouch; can never crawl; can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle; only occasional exposure to dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat[,]. . . . humidity[,] . . . and wetness[;] . . . . [c]an understand, remember, carry out simple instructions, can frequently interact with the general public, coworkers, supervisors; cannot preform [sic] work that requires a specific production rate such as assembly line and hourly quota jobs; and can deal with occasional changes in a routine work setting.

(Tr. at 54–55.) In response, Smith opined such an individual could work as an "information clerk," a "call out operator," and a "document preparer." (Tr. at 55.) However, when asked whether such a hypothetical individual could perform the work associated with these positions if the individual could only occasionally, rather than frequently, "reach overhead and all other directions with the dominant right upper extremity," Smith claimed such an individual could not. (Tr. at 55–56.) Similarly, when asked whether an individual could maintain his or her employment in any of these positions if he or she was regularly off task more than 10% of the workday, Smith claimed no. (Tr. at 57–58.)

In a written decision, dated March 14, 2025, ALJ Kenneally found Plaintiff was not disabled under the meaning of the Act beginning April 26, 2023. (Tr. at 17–31.) Consistent with the five-step sequential evaluation process for SSI, *see infra* Section III, ALJ Kenneally determined Plaintiff has not been engaged in substantial gainful activity since April 26, 2023, and has the following severe impairments: "cervical and lumbar spine disorder; right shoulder tendinitis; right ankle disorder; diabetes mellitus; interface dermatitis; subacute cutaneous lupus erythematosus; asthma; obstructive sleep apnea; [and] adjustment disorder with mixed anxiety and depressed mood." (Tr. at 20.) ALJ Kenneally also determined Plaintiff's allegations of hypertension and hyperlipidemia are asymptomatic and non-severe. (Tr. at 20.) ALJ Kenneally

found Plaintiff's severe impairments, both individual or in combination, did not meet or equal the severity of one of the list impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Impairment Listing"). (*See* Tr. at 20–22.) ALJ Kenneally determined the impairments most closely equated to Impairment Listing 1.15 (Disorders of the Skeletal Spine), 1.18 (Abnormality of a Major Joint), 3.03 (Asthma), 8.07 (Genetic Photosensitivity Disorder), 8.09 (Chronic Conditions of the Skin or Mucous Membranes), 9.00(B)(5) (Diabetes Mellitus and Other Pancreatic Gland Disorders), 12.04 (Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders); and generally equate to Section 1.00 (Musculoskeletal Disorders), 3.00 (Respiratory Disorders), 8.00 (Skin Disorders), and 14.00 (Immune System Disorders). (*See* Tr. at 20–22.) However, ALJ Kenneally found the impairments do not meet any of the specific Impairment Listings as the evidence does not demonstrate: "the other hand is []encumbered" (Impairment Listing 1.15); "[ab]normal gait with [a] significant restriction" (Impairment Listing 1.18); "asthma results in the type of chronic bronchitis or frequent attacks required under the criteria of Impairment Listing" (Impairment Listing 3.03); "the type of diabetic ketoacidosis, chronic hyperglycemia, or complications related to hypoglycemia" or "any medically determinable secondary impairments, such as diabetic neuropathy, retinopathy, or nephropathy" (Impairment Listing 9.00(B)(5)); "the type of functional limitation imposed by the claimant's dermatitis" (Impairment Listings 8.07, .09); or "one extreme limitation or two marked limitations in a broad area of functioning" (Impairment Listings 12.04, .06). (Tr. at 20–22.)

ALJ Kenneally determined Plaintiff had an RFC capable of sedentary work consistent with the hypothetical individual ALJ Kenneally had posed to Smith during the hearing. (Tr. at 22–29.) In support of same, ALJ Kenneally assigned specific evidentiary weight to the medical findings and opinions of the treating and consultative physicians. (*See* Tr. at 28–29.) Specifically, ALJ

Kenneally found the opinions of Dr. Assaleh, Dr. Legunn, Dr. Arrington, Dr. Falsenfeld, Dr. Chopra, and Dr. Shubeck to be partially persuasive and the opinions of Dr. Bagner and Dr. Arrington to be more persuasive. (Tr. at 26–28.) Based on Plaintiff's age, education, prior work experience, and RFC, ALJ Kenneally determined Plaintiff was incapable of performing her past work but was capable of performing other unskilled sedentary work relying upon Smith's testimony, such as "informational clerk," "call out operator," and "document preparer." (Tr. at 30–31.)

## II. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must

review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III. The Five-Step Sequential Evaluation Process

Under the Act, the SSA is authorized to pay SSI and disability insurance benefits ("DIB") to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has

demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the Impairment Listings. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment Listing, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment Listing, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the [Impairment] [L]istings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Hum. Servs.,* 48 F.3d 114, 117 (3d Cir. 1995)). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). When substantial evidence exists to support

the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff appeals the Commissioner's decision and requests the Court to reverse the decision pursuant to sentence four of 42 U.S.C. § 1383(c)(3) and find Plaintiff is entitled to a period of disability beginning on April 26, 2023. (*See* ECF No. 1; *accord* ECF No. 9.) Plaintiff challenges: (a) the step two determination for failure to meaningfully consider her obesity (ECF No. 9 at 21–23); (b) the step four determination for failure to properly weigh the evidence and to assess her subjective complaints (*id.* at 23–34, 37–40); and (c) the step five determination for failure to consider her time off task and absenteeism limitations and whether there are jobs in significant numbers she can perform in the economy (*id.* at 34–37). Plaintiff does not challenge either the step one or step three determinations. (*See generally id.*) The Court reviews each argument in turn.

### A. Plaintiff's Challenge to ALJ Kenneally's Step Two Determination

Plaintiff challenges ALJ Kenneally's step two determination for failure to consider whether her obesity constitutes a severe impairment. (*See id.* at 21–22.) In response, the Commissioner argues Plaintiff fails to demonstrate her obesity has a significant effect on her ability to work. (*See* ECF No. 13 at 6–9.) Alternatively, the Commissioner claims even if the record demonstrates obesity was in fact a severe impairment, the error was harmless. (*See id.*)

During step two, an ALJ considers whether a claimant has demonstrated a "severe medically determinable physical or mental impairment" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. The step two determination "is a *de minimis* screening device to dispose of

groundless claims," *Newell*, 347 F.3d at 546, which requires the ALJ to consider each and every impairment the claimant or the record has identified, both individually and in combination. *See Vanessa T-H. v. Comm'r of Soc. Sec.*, Civ. A. No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)); *see also* 20 C.F.R. § 404.1512(a)(1) ("[The SSA] will consider only impairment(s) [the claimant] say[s] [she] ha[s] or about which [it] receive[s] evidence."). If the claimant demonstrates "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work," *Corradina S. v. Bisignano*, Civ. A. No. 23-3121, 2025 WL 1902590, at *7 (D.N.J. July 10, 2025) (internal quotation marks omitted) (quoting *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)), then the evaluation proceeds to the next step, *Gbur v. Kijakazi*, Civ. A. No. 21-863, 2023 WL 8456134, at *6 (M.D. Pa. Dec. 6, 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)–(iii)). Therefore, as step two exists to screen groundless claims with no severe complaints, courts have consistently held if the ALJ finds the claimant has demonstrated at least one severe impairment and continues the evaluation onto the next step, the failure to identify another condition as severe is typically a harmless error. *See Friday v. Comm'r of Soc. Sec.*, Civ. A. No. 20-4504, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021); *Crawford v. Comm'r of Soc. Sec.*, Civ. A. No. 13-5500, 2015 WL 1003864, at *4 (D.N.J. Mar. 5, 2015).

However, an ALJ need not consider medical impairments which are not "medically determinable." *See Willistine S. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-5501, 2021 WL 4452491, at *6 n.14 (D.N.J. Sept. 29, 2021) ("[A]n ALJ does not have to consider an alleged impairment if he does not find such an impairment is medically determinable." (quoting *Diciano v. Comm'r of Soc. Sec.*, Civ. A. No. 18-17383, 2019 WL 6696523, at *4 (D.N.J. 2019))). A medically determinable impairment is an impairment that can be demonstrated by objective medical evidence

gathered through "acceptable clinical and laboratory diagnostic techniques." *Nicholas M. v. O'Malley*, Civ. A. No. 23-22121, 2024 WL 4319579, at *4 (D.N.J. Sept. 26, 2024) (citing 42 U.S.C. § 423(d)(3)). "[A]n ALJ will not use a claimant's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Corradina S.*, 2025 WL 1902590, at *7 (internal quotation marks omitted) (quoting 20 C.F.R. §§ 404.1521, 416.921).

Here, the record establishes ALJ Kenneally did not consider whether Plaintiff's obesity was a severe condition at step two. (*See* Tr. at 18.) However, the record also establishes ALJ Kenneally did find Plaintiff had demonstrated a severe impairment and continued the evaluation onto the next steps (*see id.*), wherein he did consider her obesity under both steps three and four (*see* Tr. at 21 ("In reaching the above conclusions, the undersigned has taken into consideration the claimant's obesity pursuant to the relevant sections of the [Impairment] [L]istings, such as 1.00(Q) and 3.00(O), and in accordance with SSR 19-2p."); Tr. at 25 ("Pursuant to SSR 19-2p, I have also taken into consideration the claimant's obesity when evaluating her work-related limitations. At the time of her January 2025 home sleep study, the claimant's body mass index ('BMI') was 47.6 kg/m2." (citation omitted))). In conducting an analysis of a claimant's obesity, an ALJ is not required to "use particular language or adhere to a particular format." *Shaver v. Bisignano*, Civ. A. No. 25-077, 2026 WL 594357, at *9 (M.D. Pa. Mar. 3, 2026) (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)). Rather, so long as the ALJ meaningfully considered "the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step," remand is not required. *Id.* (quoting *Diaz*, 577 F.3d at 504); *accord Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014); *see also Cherese M. B. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-17718, 2024 WL 1270834, at *7

(D.N.J. Mar. 26, 2024) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so." (internal quotation marks omitted)). Even assuming, *arguendo*, ALJ Kenneally did not properly consider Plaintiff's obesity under both steps three or four, Plaintiff has failed to demonstrate a prejudicial error requiring remand. *See Lolita A. o/b/o Vincent A. v. Comm'r of Soc. Sec.*, Civ. A. No. 24-4736, 2026 WL 237288, at *6–8 (D.N.J. Jan. 29, 2026) (requiring a plaintiff to demonstrate how further consideration of her obesity would change the ultimate determination). Therefore, the record establishes ALJ Kenneally considered Plaintiff's obesity at each relevant step, including but not limited to in support of her RFC determination. *See Shaver*, 2026 WL 594357, at *9.

Accordingly, the Court finds ALJ Kenneally's failure to consider whether Plaintiff's obesity was a severe condition at step two is a harmless error and, as such, remand for further administrative proceedings at step two is not warranted.

**B. Plaintiff's Challenge to ALJ Kenneally's Step Four Determination**

Plaintiff challenges ALJ Kenneally's step four determination that she has an RFC to perform sedentary work. (ECF No. 9 at 23–34, 37–40.) Specifically, Plaintiff argues ALJ Kenneally failed to properly weigh the evidence (*id.* at 23–34) and failed to adequately consider her subjective complaints (*id.* at 37–40). In response, the Commissioner argues ALJ Kenneally afforded controlling weight to the opinion of the medical examiners in support of the RFC (ECF No. 13 at 9–15) and appropriately considered her subjective complaints (*id.* at 18–19).

At step four in the disability determination process, an ALJ must assess the claimant's RFC and compare it to her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. The claimant bears the burden of proof on step four, *see Sykes*, 228 F.3d at 263, including to present the facts necessary for the ALJ to assess the claimant's RFC, *see Bowen*, 482 U.S. at 146

n.5. On appeal, a claimant must show: (1) an error occurred; and (2) but for that error, she might have proven her disability. *See Holloman*, 639 F. App'x at 814. If a claimant believes an error was made, he or she "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407).

In determining a claimant's RFC, the ALJ is required to consider all relevant medical evidence from acceptable sources and "may not make speculative inferences from medical reports." *Plummer*, 186 F.3d at 429. "Although the ALJ may weigh the credibility of the evidence," *Burnett*, 220 F.3d at 121, "the ALJ may not reject evidence for no reason or for the wrong reason," *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (internal quotation marks omitted); *see also Plummer*, 186 F.3d at 429 ("[A]n ALJ is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence."). Rather, the ALJ "must give some indication of the evidence which he rejects and his [or her] reason(s) for discounting such evidence," *Burnett*, 220 F.3d at 121, pursuant to the framework articulated in 20 C.F.R. § 404.1520c. In evaluating the credibility of a medical opinion, the most important factors are its supportability and consistency with evidence from other sources. 20 C.F.R. § 404.1520c. Other relevant factors include, but are not limited to, whether the medical source received education or training in a relevant area of specialty, personally examined the claimant, or is familiar with the disability program's policies and requirements. 20 C.F.R. § 404.1520c(c)(3)(v), (4), (5).

Here, ALJ Kenneally determined Plaintiff has an RFC to perform "sedentary work" but requires the use of a cane to ambulate, which precludes work involving "unprotected heights, moving mechanical parts, or operation of motor vehicles." (Tr. at 29.) ALJ Kenneally found Plaintiff can "occasionally climb ramps or stairs, balance, stoop, kneel, or crouch, but never crawl

or climb ladders, ropes, or scaffolds." (Tr. at 29.) Although she can occasionally push, pull, or operate hand controls, her right shoulder impairment limits her ability to frequently reach. (Tr. at 29.) Furthermore, due to her history of respiratory impairments, Plaintiff "can have no more than occasional exposure to humidity, wetness, extremes of temperature, or pulmonary irritants." (Tr. at 29.)

In support, ALJ Kenneally considered, in part, Plaintiff's subjective complaints, the records of her treating physicians, and the opinions of Dr. Arrington, Dr. Felsenfeld, Dr. Sanchez, Dr. Bagner, Dr. Chopra, and Dr. Shubeck. (*See* Tr. at 22–29.) Notably, ALJ Kenneally found the treating physicians and Dr. Arrington, Dr. Felsenfeld, Dr. Chopra, Dr. Shubeck's opinions to be partially persuasive and Dr. Sanchez and Dr. Bagner's opinions to more persuasive. (Tr. at 26–29.) Therefore, the record establishes ALJ Kenneally's RFC determination considered Plaintiff's subjective complaints, relied on the opinions of both the treating physicians and the medical consultants in support of the RFC determination, and afforded controlling weight to the relevant opinions.

Accordingly, the Court finds ALJ Kenneally's determination that Plaintiff has an RFC to perform sedentary work is supported by substantial evidence in the record and, as such, remand for further administrative proceedings at step four is not warranted.

**C. Plaintiff's Challenge to ALJ Kenneally's Step Five Determination**

Plaintiff challenges ALJ Kenneally's step five determination there exist jobs in significant numbers that she can perform. (ECF No. 9 at 34–37.) Specifically, Plaintiff argues ALJ Kenneally failed to consider whether any jobs exist that would accommodate her repeated absences and time off task. (*See id.* at 34–36.) Furthermore, Plaintiff claims ALJ Kenneally failed to consider her language fluency skills to perform the available jobs of "information clerk" and "call out operator."

(*See id.* at 36–37.) Notably, Plaintiff does not claim a language fluency skills determination was necessary to perform the available job of "document preparer." (*See generally id.*) In response, the Commissioner claims ALJ Kenneally was not required to consider whether any such jobs exist as the alleged requirements of absences and time off task were merely hypothetical and not credibly supported by the record. (ECF No. 13 at 15–16.) Additionally, the Commissioner posits that, in determining whether Plaintiff was capable of performing the jobs of "information clerk" and "call out operator," ALJ Kenneally could not consider her language fluency skills under SSR 20-1p. (*See id.* at 16–17.) *But see Olga S. v. Comm'r of Soc. Sec.*, Civ. A. No. 25-1443, 2026 WL 555458, at *11 (D.N.J. Feb. 27, 2026) ("Despite seemingly erecting a categorical bar, courts in this Circuit have not interpreted the new regulation as a strict prohibition against considering a claimant's ability to communicate in English.").

During step five, an ALJ must "assess whether [the] claimant can return to past work or adjust to other work." *Ubaldini v. Comm'r Soc. Sec.*, No. 22-2686, 2023 WL 7001840, at *4 (3d Cir. Oct. 24, 2023). To assess same, the ALJ often relies "on the testimony of vocational experts and specialists." *Id.* (internal quotation marks omitted) (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014)). Such testimony typically "centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Zirnsak*, 777 F.3d at 614 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Notably, the ALJ is not required to convey to the vocational expert each and every individual alleged impairment but rather is merely required to "accurately" convey the credibly established limitations as determined under step four. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "An ALJ's mere inclusion of certain alleged limitations among the hypothetical questions does not reflect the ALJ's acceptance that a claimant suffers from such limitations." *Ubaldini*, 2023 WL

7001840, at *4. An objection to the adequacy of the ALJ's hypothetical questions "often boil[s] down to [an] attack[] on the RFC assessment itself." *Cox v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 24-140, 2025 WL 2556573, at *5 (W.D. Pa. July 12, 2025) (quoting *Rutherford*, 399 F.3d at 554 n.8). However, a plaintiff that fails to challenge a vocational expert's testimony at a hearing waives the right to object to an ALJ's reliance on same. *See Diego H. v. Bisignano*, Civ. A. No. 23-3870, 2025 WL 2058144, at *9 (D.N.J. July 23, 2025); *see also Carolyn C. v. Kijakazi*, Civ. A. No. 20-3544, 2021 WL 4932785, at *15 (D.N.J. Oct. 22, 2021) ("[A] failure to challenge a vocational expert's testimony at the hearing waives Plaintiff's right to later object to that testimony."); *Tonti v. Saul*, Civ. A. No. 20-092, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, Civ. A. No. 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("[Plaintiff]'s counsel did not object to either the VE's qualifications or to her testimony in this respect. Therefore, the ALJ did not err in relying on the VE's testimony." (citation omitted)).

Here, Plaintiff neither objected to nor challenged the vocational expert's testimony at the hearing and, in fact, posed no questions to the expert. (*See generally* Tr. at 36–59.) Rather, Plaintiff does not challenge the accuracy of the ALJ's hypothetical questions but instead attempts to challenge the RFC determination under step five. (*See* ECF No. 9 at 34–37 (arguing ALJ Kenneally did not consider Plaintiff's absenteeism, time off-task, or limited language skills). *But see* Tr. at 25–26 (finding Dr. Assaleh's opinion regarding absenteeism and time off-task to be unsupported and not persuasive); Tr. at 54–58 (including the additional condition of off-task tolerance); Tr. at 58 (posing no questions to the vocational expert regarding Plaintiff's limited language skills).)

Such a challenge, however, is inappropriate at this stage. *See Cox*, 2025 WL 2556573, at *5. Because the determination that Plaintiff has an RFC to perform sedentary work is supported by substantial evidence in the record, *see supra* Section IV.B, ALJ Kenneally was not required to include the additional proposed limitations of repeated absences and time off-task.

Accordingly, the Court finds ALJ Kenneally's determination that jobs exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence in the record and, as such, remand for further administrative proceedings at step five is not warranted.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's appeal of the Commissioner's final decision is **DENIED**, and the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

**Date: August 24, 2026**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**